Robert AURIC, Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY COMPANY and Timothy P. Crawford, Defendants-Respondents.

Supreme Court

No. 82–1121. *Argued March 1, 1983.—Decided March 29, 1983.*
(Also reported in 331 N.W.2d 325.)

For the plaintiff-appellant there were briefs by *Merton N. Rotter* and *Warshafsky, Rotter, Tarnoff, Gesler & Reinhardt, S.C.*, Milwaukee, and oral argument by *Merton N. Rotter*.

For the defendants-respondents there was a brief by *C. James Heft* and *Heft, Dye, Heft & Paulson,* Racine, and oral argument by *C. James Heft*.

DAY, J. This is an appeal from a judgment of the circuit court for Racine county, James W. Wilbershide, Judge, which dismissed Robert Auric's (Auric) complaint. Auric appealed and filed a petition to bypass the court of appeals pursuant to sec. 808.05, Stats. 1979–80. This court granted the petition on November 8, 1982.

There are three issues to be considered on appeal. The first issue is: May an attorney who drafted a will be held liable to a beneficiary of the will not in privity with the attorney for the attorney's negligence in failing to properly supervise the execution of the will?

The second issue is: Should the respondent be allowed to challenge a trial court order denying his motion for summary judgment when he has failed to file a notice of cross-appeal pursuant to sec. 809.10(2)(b), Stats. 1979–80.[1]

The final issue is: When does the statute of limitations in sec. 893.52, Stats. 1979–80,[2] commence to run in an action by a will beneficiary against an attorney for negligently supervising the execution of a will?

We conclude that the beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of the will even though the beneficiary is not in privity with that attorney. We deny plaintiff-appellant's motion to dismiss the defendant-respondent's cross-appeal because the defendant failed to file a cross-appeal under sec. 809.10(2)(b), Stats., but raised the issue for the first time in his brief

[1] Section 809.10(2)(b), Stats. 1979–80:

"809.10 **Rule (Initiating the appeal).** . . . (2) MULTIPLE APPEALS. . . . (b) *Cross-appeal.* A respondent who seeks a modification of the judgment or order appealed from or of another judgment or order entered in the same action or proceeding shall file a notice of cross-appeal within the period established by law for the filing of a notice of appeal, or 30 days after the filing of a notice of appeal, whichever is later. A cross-appellant has the same rights and obligations as an appellant under ch. 809."

[2] Section 893.52, Stats. 1979–80:

"893.52 **Action for damages for injury to property.** An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed."

on appeal. We also conclude that the plaintiff, Auric's, action was commenced within the period of the statute of limitations.

Accordingly, we reverse the decision of the trial court and direct the trial court to enter judgment in favor of the plaintiff in the amount of $25,000, the amount bequeathed to him in the invalid will. We remand the case to the trial court to determine whether an award of prejudgment interest should be made.[3]

This action was tried on stipulated facts as follows.

The testator, Frank P. Goldstein, died on April 13, 1975. Prior to his death, the decedent had attorney Timothy P. Crawford draft a new Will and Revocable Living Trust to replace a previous will dated April 30, 1970. On July 24, 1973, Mr. Crawford had the decedent come to his office to execute the new will and trust. Crawford explained the provisions of the trust to the decedent, had him sign the document, and then both Crawford and his secretary signed the trust document as witnesses. Crawford then explained the provisions of the will to the decedent and had him sign that document. Crawford then signed as a witness. However, because of what was characterized as either "confusion" or a "mistake of the moment," Crawford's secretary failed to sign the will.

The 1973 will contained a specific bequest of $25,000 to Robert Auric, who was Mr. Goldstein's brother. The 1970 will contained no such bequest.

On July 1, 1975, the Racine County Probate Court ordered the 1970 will admitted to probate and denied

---

[3] Although the damages here are liquidated and thus prejudgment interest would normally be properly awarded *(State ex rel. Schilling & Klingler v. Baird,* 65 Wis. 2d 394, 401, 222 N.W.2d 666 (1974)), the defendant claims the plaintiff waived his right to interest by certain acts prior to the bringing of this action. We remand the case to the trial court for a factual determination on this question.

admission to the 1973 will because it was not executed as required by sec. 853.03(2), Stats. 1971,[4] which required two subscribing witnesses.

Crawford specifically stipulated that his action in failing to obtain the signature of a second witness to the July 24, 1973 will was negligent but "clearly not fraudulent."

On March 12, 1981, Auric filed an action against Crawford. His action contained two claims—one based on a theory of breach of an implied contract and the other based on negligence.

On June 1, 1981, Crawford moved for summary judgment on the grounds that both claims were barred by the statute of limitations. On October 29, 1981, Judge Wilbershide issued a written decision granting Crawford's motion on the contract action but denying the motion on the negligence action. Judge Wilbershide reasoned that the breach of contract occurred on the date of the negligent act, July 24, 1973, and thus an action for breach of contract which was commenced on March 12, 1981, was brought well after the six-year statute of limitations for actions on contracts. Judge Wilbershide, however, also concluded that the statute of limitations for the negligence action did not commence to run until the date Goldstein died, April 13, 1975, and thus the negligence action was commenced within the six-year period.

The case was then submitted to the trial court on the stipulated facts. The trial court issued a written decision on April 30, 1982, in which it ruled that Crawford was not liable to Auric for his negligent act because no priv-

---

[4] Section 853.03(2), Stats. 1971:

"853.03 **Execution of wills.** Every will in order to be validly executed must be in writing and executed with the following formalities: . . .

"(2) It must be signed by 2 or more witnesses in the presence of the testator and in the presence of each other."

ity existed between the two. The court therefore dismissed Auric's complaint in an order dated May 17, 1982.

Auric appealed and this court granted his petition to bypass the court of appeals.

The first issue is whether an attorney may be held liable to a beneficiary of a will not in privity with the attorney for the attorney's negligence in drafting or supervising the execution of the will.

While it has long been the general rule that an attorney is not liable to third parties for acts committed in the exercise of his duties as an attorney, this rule is not without exceptions. Where fraud has been involved, attorneys have been held liable to third parties. *Scandrett v. Greenhouse*, 244 Wis. 108, 11 N.W.2d 510 (1943). This exception was reaffirmed in *Goerke v. Vojvodich*, 67 Wis. 2d 102, 108, 226 N.W.2d 211 (1975), a case in which the court affirmed a trial court's dismissal of a third-party complaint against an attorney because the complaint failed to state a cause of action in fraud or wrongful conduct.

The question is should an exception be recognized to the general rule of attorney nonliability to third parties to allow a beneficiary of a will to sue an attorney for his negligence in drafting or supervising the execution of a will. This court has frequently stated that it is a question of public policy—and, thus, one appropriate for a determination by this court—as to whether liability should not be imposed even though damage is caused by the negligent act of another. *Kornitz v. Earling & Hiller, Inc.*, 49 Wis. 2d 97, 102–103, 181 N.W.2d 403 (1970); *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976); *Ollerman v. O'Rourke Co. Inc.*, 94 Wis. 2d 17, 51, 288 N.W.2d 95 (1980). The question of whether to impose liability upon the attorney here is one that involves a consideration of public policy.

Jurisdictions which have considered this question are divided on the issue. *See* Annot., *Attorneys-Liability to*

*Third Parties,* 45 A.L.R.3d 1181. Where courts have shied away from allowing the imposition of liability, concern has been expressed that such liability may conflict with the duty an attorney owes to his client. *Clagett v. Dacy,* 47 Md. App. 23, 420 A.2d 1285, 1289–1290 (1980). Courts that have allowed the imposition of liability seem to recognize that it will make attorneys more careful in the execution of their responsibilities to their clients. *Lucas v. Hamm,* 56 Cal. 2d 583, 15 Cal. Rptr. 821, 364 P. 2d 685, 688 (1961), cert. denied 368 U.S. 987 (1962); *Licata v. Spector,* 26 Conn. Sup. 378, 381, 225 A.2d 28 (1966). This is especially true where the beneficiaries of wills have been the injured third parties because, as the court in *Licata* wrote, "public policy would seem to favor the court's extending its equitable arm to assist innocent parties seeking just damages resulting from an error committed by another and affecting their rights, which error those innocent parties were never themselves able to correct." 26 Conn. Sup. at 382.

In this state, there is a constitutional right to make a will and to have it carried out according to the testator's intentions. *Cowie v. Strohmeyer,* 150 Wis. 401, 136 N.W. 956 (1912); *Estate of Ogg,* 262 Wis. 181, 186, 187, 54 N.W.2d 175 (1952); *Will of Wright,* 12 Wis. 2d 375, 380, 107 N.W.2d 146 (1961). This right reflects a strong concern that people should be as free as possible to dispose of their property upon their death. Allowing a will beneficiary to maintain a suit against an attorney who negligently drafts or supervises the execution of a will is one way to make an attorney accountable for his negligence.

Accountability should result in increasing the care with which attorneys draft wills and see to their execu-

tion. It is consistent with and promotes this state's long-standing public policy supporting the right of a testator to make a will and have its provisions carried out. Public policy supports the imposition of liability on an attorney who acts negligently in drafting or supervising the execution of a will resulting in a loss to a beneficiary named therein. Therefore the lack of privity should not be a bar to this action.

Such a determination is consistent with decisions of other jurisdictions which have abandoned a strict privity test in will beneficiary suits against attorneys. Many of those courts have relied upon a balancing of the factors set out in *Lucas*.[5] Those factors are: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm." 364 P.2d at 687.

Examining these factors in light of the stipulated facts in this case, it is clear that this will was intended to bring direct benefit to the plaintiff. It was foreseeable that if the will was not admissible in probate it would cause harm to him. It is also clear that the plaintiff suffered a loss of his $25,000 bequest and that loss resulted directly from the defendant's negligence. Finally, in order to prevent future harm to others similarly situated, the imposition of liability is proper.

Although the lack of privity does not bar this action, there remains the question of whether liability should be imposed in this specific case. Normally, such a factual determination would be one for the trial court to make.

---

[5] See, *Fickett v. Superior Ct. of Pina County*, 27 Ariz. App. 793, 795, 558 P.2d 988 (1976); *McAbee v. Edwards*, 340 So. 2d 1167, 1168–1169 (Fla. App. 1976); *Guy v. Liederbach*, 279 Pa. Super. 543, 421 A.2d 333, 335 (1980).

However, because this case is before the court on stipulated facts, the only task that remains is to apply the law to undisputed facts.

Here Crawford admits that he negligently supervised the execution of the will. That negligence resulted in the loss to Auric of a $25,000 bequest. Since neither Crawford's liability nor the amount of damage is in dispute, we reverse the decision of the trial court and direct it to enter judgment in the plaintiff's favor in the amount of $25,000. However, because of a factual dispute between the parties on the question of whether prejudgment interest should also be awarded, we remand the case to the trial court for a decision on that issue.

The second issue on appeal is whether the respondent's challenge to a trial court order denying his motion for summary judgment based on the defense of the running of the statute of limitations should be allowed where he has failed to raise the issue on cross-appeal under sec. 809.10(2)(b), Stats. Crawford raised the defense in his brief on appeal.

The appellant raised this issue in this court by a motion to dismiss the respondent's "attempted cross-appeal" and strike those portions of his brief relating to this question. We ordered the motion be held in abeyance until the case could be considered on the merits.

Section 809.10(2)(b), Stats., governs cross appeals and requires that a respondent who seeks modification of an order entered in a proceeding from which the appellant appealed must file a notice of cross-appeal within thirty days after filing of a notice of appeal. The defendant failed to do this but now seeks in his brief to raise the issue of the trial court's denial of his motion for summary judgment.

In *State v. Alles,* 106 Wis. 2d 368, 316 N.W.2d 378 (1982), this court discussed the cross-appeal requirement contained in sec. 809.10(2)(b).

It is clear that orders challenged on cross-appeal need not be final orders. *Alles,* 106 Wis. 2d at 387–388. It is also true that a respondent may raise an issue in his briefs without filing a cross-appeal "when all that is sought is the raising of an error which, if corrected, would sustain the judgment. . ." *Alles,* 106 Wis. 2d at 390. This Court wrote in *Alles,*

"The reason for this is the accepted appellate court rationale that a respondent's judgment or verdict will not be overturned where the record reveals the trial court's decision was right, although for the wrong reason. An appellate court, consistent with that percept [sic], has the power, once an appealable order is within its jurisdiction, to examine all rulings to determine whether they are erroneous and, if corrected, whether they would sustain the judgment or order which was in fact entered." *Alles,* 106 Wis. 2d at 391.

Here, were we to conclude that the trial judge erred in denying Crawford's motion for summary judgment on the grounds that the negligence action was barred by the statute of limitations, such a decision would sustain the decision of the trial court. The issue is one that under *Alles* can be raised for the first time in briefs on appeal without having filed a cross-appeal. We therefore deny the appellant's motion.

The final issue is when did the statute of limitations under sec. 893.52, Stats., commence to run in a negligence action by a will beneficiary against an attorney who drafted and supervised the execution of the will.

Under sec. 893.52, an action must be commenced within six years after the cause of action accrues. In *Boehm v. Wheeler,* 65 Wis. 2d 668, 223 N.W.2d 536 (1974), an action for damages for legal malpractice, this court held that for purposes of sec. 893.52 (then sec. 893.19(5)), it

was the date of injury rather than the date of the negligent act which commenced the running of the period of limitations. *Wheeler,* 65 Wis. 2d at 676–677.

In the present case the negligent act occurred on July 24, 1973, the date attorney Crawford negligently supervised the execution of the will. The question is whether the injury to Auric occurred on the same date as the negligent act.

We conclude that Auric was not injured on the date of Crawford's negligent act but rather was injured on the date of Frank Goldstein's death for it was only after that date that Auric would have had an enforceable right under the July 24, 1973, will.[6] As the court of appeals properly determined in *Estate of Eisenberg,* 90 Wis. 2d 620, 630, 280 N.W.2d 359 (1979), "a will does not create an enforceable right in a beneficiary until the testator has died." Therefore, Auric could suffer no injury before Goldstein died for at any point up until Goldstein's death, the will could have been changed and the bequest removed. Since Goldstein died on April 13, 1975, and the action was filed on March 12, 1981, the action was commenced within the six year period set out in sec. 893.-52 (then sec. 893.19(5)).

*By the Court.*—Judgment of the trial court is reversed with directions to enter judgment in favor of the plaintiff in the amount of $25,000 and cause remanded for further proceedings not inconsistent with this opinion.

---

[6] Other jurisdictions that have considered this question have determined that the statute of limitations does not commence to run until the testator's death. *Heyer v. Flaig,* 70 Cal. 2d 223, 449 P.2d 161, 165, 74 Cal. Rptr. 225 (1969); *Shideler v. Dwyer,* 417 N.E.2d 281, 290 (Ind. 1981).