Walter David TALLMADGE, Plaintiff-Appellant,†

v.

Gerald P. BOYLE and
Great American Insurance Company,
Defendants-Third-Party Plaintiffs-Respondents,

Robert E. SUTTON, Third-Party Defendant.

Court of Appeals

*No. 2006AP1075. Submitted on briefs January 3, 2007.
—Decided February 21, 2007.*

2007 WI App 47

(Also reported in 730 N.W.2d 173.)

† Petition to review denied 5/22/07.

512

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Nicholas C. Zales* of *Zales Law Office*, of Milwaukee.

On behalf of the defendants-third-party-plaintiffs-respondents, the cause was submitted on the brief of *Ross A. Anderson* and *Eric J. Meier* of *Whyte Hirschboeck Dudek S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Walter David Tallmadge appeals from an order granting summary judgment to Gerald P. Boyle and his insurer, Great American Insurance Company. Tallmadge claims the trial court erred

in dismissing his legal malpractice suit against Boyle. Tallmadge raises two claims: (1) the trial court erred in ruling that there was insufficient evidence to create a genuine issue of fact regarding the element of "actual innocence"; and (2) another exception to the general rule that only trustees, and not beneficiaries, may bring actions on behalf of a trust should be created. Because the trial court correctly applied the "actual innocence" rule and because we see no basis to support creating the exception Tallmadge requests, we affirm.

## BACKGROUND

¶ 2. Tallmadge is a seventy-five-year-old man, and former Wisconsin resident, who is presently incarcerated in the California penal system. In July 1997, a California jury found him guilty of fifteen counts of sexually assaulting minor girls, including nine counts of committing a forcible lewd act upon a child under the age of fourteen years; two counts of continuous sexual abuse of a child; one count of rape; two counts of forcible oral copulation; and one count of forcible penetration with a foreign object.[1] The jury also found that Tallmadge had a prior conviction in California and had used a firearm during the commission of two of the counts of a forcible lewd act upon a child. He was sentenced to 265 years in prison. During the trial, Tallmadge was represented by California attorneys Leonard Levine and Charles Weedman.

---

[1] The conviction followed the second trial in this matter. During the first trial, the jury announced that it was deadlocked at 9–3 in favor of convicting Tallmadge. Tallmadge waived his right against double jeopardy and consented to a retrial of the case on the same charges. The trial court declared a mistrial and Tallmadge was re-tried in July as noted above.

¶ 3. In August 1997, the Charles Albright Trust retained Attorney Boyle to represent Tallmadge with respect to matters related to the trust, to consult with Attorney Weedman with the direct appeal, and to assist in matters related to the multi-million dollar civil judgments the two young women victims had obtained based on the criminal conviction.

¶ 4. In June 1998, Weedman filed a state court appeal with the California Court of Appeals, alleging: (1) the trial court committed reversible error when it admitted evidence of sexual misconduct not charged in the information; (2) the trial court erred in failing to grant appellant's motion for a mistrial; (3) Tallmadge's prior Wisconsin conviction should not have been counted as a "strike" for the purpose of enhancing his sentence;[2] and (4) the waiver of a potential conflict of interest was ineffective. In June 1999, the California Court of Appeals issued a decision affirming the convictions. The court ruled that the other acts were properly admitted because Tallmadge engaged in similar patterns of molestation with each of the girls, he knew all of his victims, he developed a trusting relationship with each before beginning the sexual abuse, all were under eighteen years old, and his pattern and method of psychological manipulation was consistent in each case. The appellate court also held that the Wisconsin conviction was sufficiently proven to satisfy the elements required under the three strikes law, that the trial court had correctly handled the mistrial motion and that if any conflict with trial counsel existed, it was properly waived.

---

[2] In December 1959, when Tallmadge resided in Wisconsin, he was convicted of indecent behavior with a child in violation of WIS. STAT. § 944.11(1) (1959). The California court counted this conviction as a "strike" as that term is used in the California "three strikes" law.

¶ 5. In July 1999, Weedman filed a petition for review of the appellate court decision with the California Supreme Court. The petition raised only two issues: the other acts evidence was improperly admitted and the trial court erred in failing to grant the mistrial. The California Supreme Court denied the petition in September 1999.

¶ 6. In January 2000, Boyle was asked to focus on securing relief for Tallmadge via a writ of *habeas corpus*. Based on this added task, Boyle requested and was paid a lump sum of $100,000 by the Albright Trust, with the circuit court's approval. Each payment made to Boyle from the trust had to be approved by the circuit court. Between January of 2000 and July of 2003, Boyle was paid a total of $185,000 to represent Tallmadge in seeking postconviction *habeas corpus* relief. During this time, no writs were actually filed. In September 2002, Boyle prepared a draft of a state court writ. The final draft was provided to Tallmadge in March or April 2003. Tallmadge was not satisfied with the contents of the draft and fired Boyle in July 2003.

¶ 7. Tallmadge then retained Robert E. Sutton, who filed a writ of *habeas corpus* in federal court in September 2003. Sutton raised five issues in the writ: (1) count one—forcible lewd act upon a child—of the information was unconstitutional as it charged Tallmadge with a crime that was committed beyond the six-year statute of limitations; (2) count two—continuous sexual abuse of a child—of the information was unconstitutional for the same reason as count one; (3) Tallmadge's rights to due process and equal protection were violated when the trial court allowed other acts evidence, which occurred beyond the statute of limitations, into evidence; (4) the trial court erred in denying the motion for a mistrial; and (5) Tallmadge

received ineffective assistance of counsel who failed to raise the statute of limitations defense. The response to the petition requested that the petition be denied because it was untimely and because Tallmadge had failed to exhaust state remedies with respect to issues (1), (2), (3) and (5).

¶ 8. In March 2004, United States Magistrate Judge Paul Abrams issued a decision dismissing the petition with prejudice based on the fact that it was not timely filed. The decision also held that Tallmadge's reliance on *Stogner v. California,* 539 U.S. 607 (2003) for his statute of limitations assertions was misplaced because "California Penal Code § 803(g) took effect on January 1, 1994, and [Tallmadge] had not yet acquired a defense under the statute of limitations as of that date . . . ." As a result, his conviction was not affected by the *Stogner* decision. The federal district court adopted the magistrate's opinion and dismissed the petition with prejudice. In April 2004, Sutton filed a request for a certificate of appealability, which was denied by the court. Subsequent appeals from this decision to the Ninth Circuit Court of Appeals and a petition for a writ of certiorari to the United States Supreme Court were also denied.

¶ 9. In October 2004, Tallmadge filed this action against Boyle and his insurer, alleging legal malpractice, breach of contract, and breach of fiduciary duty. Tallmadge's complaint never sought the return of legal fees. Boyle filed an answer denying the allegations and asserting affirmative defenses.

¶ 10. On July 6, 2005, Boyle filed a motion seeking summary judgment. The hearing was set for December 5, 2005. On October 18, 2005, Tallmadge moved to amend the complaint to add the allegation that Boyle failed to file a state court writ as well as a federal court

writ of *habeas corpus*. Tallmadge then filed his brief opposing the summary judgment motion. Boyle filed a third-party action for contribution against Sutton.

¶ 11. At the December 5th hearing, the court granted Tallmadge's motion to amend the complaint, and adjourned the summary judgment matter to December 15, 2005. On December 7, 2005, Boyle submitted a letter brief to the court raising the defense that Tallmadge lacked standing to request return of the $185,000 paid to Boyle. Tallmadge, in turn, filed his own letter brief, responding to Boyle's assertion that he lacked standing to request the refund. On December 15, 2005, the trial court set a briefing schedule for the issues raised in the letter briefs and adjourned the decision for hearing to February 1, 2006. At the February 1st hearing, the trial court granted Boyle's motion, dismissing the complaint in its entirety. The trial court reasoned as follows:

> This case is before the Court on the Defendant's motion for summary judgment . . . . Subsequent to the hearing[,] Attorney Anderson wrote to the Court regarding Attorney Zales' argument at the hearing for return of fees paid to the Boyle law firm in connection with legal services done on behalf of Mr. Tallmadge asserting that he was unaware that such a claim was being made and further asserting Mr. Tallmadge was not a proper party to bring an action on behalf of the trust for return of trust property. Attorney Zales responded briefly and requested an opportunity to fully respond. A telephone status conference was held on December 15th and a briefing schedule was established. This case is now before the Court today for a decision. For the reasons to be stated in a moment, because this Court finds that Hicks [v]. Nunnery, 253 Wis. 2d 721, 2002 Court of Appeals case, is controlling law for the facts in this case, the Defendant's motion for summary judgment as to the legal malpractice claim is granted.

Further, because this Court finds that neither exception to the general rule that a beneficiary may not bring a suit to recover trust property applies to the present factual situation, Mr. Tallmadge does not have standing to maintain an action for return of attorney's fees paid to Attorney Boyle from the trust funds under his breach of fiduciary duty and breach of contract claims.

To establish a claim for legal malpractice, a Plaintiff must prove the following four elements: One, that a lawyer client relationship existed; two, that the Defendant committed acts or omissions constituting negligence; three, that the attorney's negligence caused the Plaintiff's injury; and four, the nature and extent of injury.

¶ 12. The court then discussed the rationale in *Hicks v. Nunnery*, 2002 WI App 87, 253 Wis. 2d 721, 643 N.W.2d 809 which, based on public policy, held that a convicted defendant who files a legal malpractice suit against his trial counsel, must also "prove he is innocent of the charges of which he was convicted in order to prevail on a claim of legal malpractice . . . ." *Id.*, ¶ 46. The trial court in the instant case then continued:

In this case there must be some causal link between the actions or inactions of Attorney Boyle and Mr. Tallmadge's alleged damages. Now, this Court's mindful that the Hicks case did not concern counsel hired for appellate purposes. However, the reasoning set forth in that decision still should apply to this case. Various public policy considerations are discussed in that case, and this Court finds those considerations persuasive. Why should a Plaintiff be able to maintain a cause of action for legal malpractice when the Plaintiff cannot demonstrate that the outcome would be any different. Tallmadge asserts that the failure of Attorney Boyle to file a state and federal writ resulted in a lost opportunity. It would have given him a chance at a new trial.

Tallmadge does not assert that he would be a free person had Attorney Boyle filed the federal and state writs but rather that he could have possibly have been freed. He does not assert but for Attorney Boyle's inaction I would be a free person. There is no evidence in this record, other than Mr. Tallmadge's assertion, that he is innocent. Attorney Sutton, Tallmadge's expert, states that by failing to file any writ, Boyle cost Tallmadge any chance at writ relief in either state or federal court. Because Boyle's failures, acts and omissions were the direct cause of Tallmadge's lost chance at freedom. [sic] Tallmadge's expert does not state in his affidavit but for Attorney Boyle's actions or inactions Tallmadge's convictions would have been vacated and he would be a free person today. He cannot support that opinion because it's not true. It appears from the record that Mr. Tallmadge is 70 plus years old. In June of 1997 he was found guilty, I believe it was 15 criminal counts . . . and was sentenced to . . . 256 years in prison. The Court notes that Plaintiff's expert, Attorney Sutton, filed a federal petition which was dismissed as it was untimely . . . . But it is the Court's understanding that the petition only addressed two of the convictions. So even if it would have been granted, Mr. Tallmadge would remain in prison on the other 13 convictions with sentences longer than his life expectancy.

With respect to Mr. Tallmadge's claim for return of fees paid to Attorney Boyle. The parties do not . . . disagree on the applicable law. Boyle was hired by Attorney William Haberman . . . the trustee of the Charles Albright Trust, to perform legal work for the Plaintiff, the beneficiary of the trust. The trustee paid Boyle. The trustee and the Circuit court Judge . . . approved all payments from the trust to Boyle for legal services. Those facts are not in dispute. Both parties agree that the right to sue for recovery of trust property is a right of the trustee not a beneficiary with limited exceptions. The two limited exceptions under which a beneficiary is allowed to proceed with a cause of action

520

are, one, when there is a conflict between the trustee and the beneficiary; and two, when the trustee has failed to bring a meritorious claim against a third party. This record does not establish a conflict between the trustee, Mr. Haberman, and the ... beneficiary, Mr. Tallmadge. The fact that the trustee hired Attorney Boyle and paid him does not create a conflict. The Plaintiff requests this Court to draw certain inferences, but this Court can find no reasonable basis in the record to draw such requested inferences regarding a conflict. Further, there is nothing in this record to support a finding that the trustee failed to bring a meritorious claim. There is no evidence submitted in this record that the Plaintiff ever asked the trustee to bring an action for the return of attorney's fees paid to Attorney Boyle and that the trustee ever refused to file one. There is nothing in this record to establish or reasonably infer that the trustee failed to bring a meritorious claim. The exceptions to [the] general rule that a beneficiary may not sue to recover trust property have not been met in this case .... The Defendant's motion for summary judgment is granted.

¶ 13. Tallmadge now appeals.

## DISCUSSION

¶ 14. This case comes to us after the grant of summary judgment. The standards for reviewing a summary judgment case are well-known and will not be repeated here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We review orders for summary judgments independently, employing the same methodology as the trial court. *Id.* at 317. We do value any analysis that the trial court has placed in the record. We shall affirm the trial court's decision granting summary judgment if the record demonstrates

that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The mere allegation of a factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 224, 522 N.W.2d 261 (Ct. App. 1994). One purpose of summary judgment is to avoid a trial where no genuine issues of material fact exist, leaving nothing to try. *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981).

*A. Hicks Application.*

¶ 15. The first issue in this case centers on the element of causation. As pointed out above, in order for Tallmadge to succeed in prosecuting this legal malpractice claim against Boyle, he would be required to prove four elements: (1) he had a lawyer-client relationship with Boyle; (2) Boyle committed acts or omissions constituting negligence; (3) the negligence caused injury to Tallmadge; and (4) the nature and extent of the injury. *See Lewandowski v. Continental Cas. Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979). In *Hicks*, we concluded: "as a matter of public policy, persons who actually commit the criminal offenses for which they are convicted should not be permitted to recover damages for legal malpractice from their former defense attorneys." *Id.*, 253 Wis. 2d 721, ¶ 48. We emphasized that proof of actual innocence was "in addition to, not a substitute for," the causation element. *Id.*, ¶ 50.

¶ 16. The record in this case contains a multitude of disputed issues of fact. Tallmadge spends a substantial amount of time providing allegations and information with respect to Boyle's conduct, including that

Boyle failed to file any writ, state or federal, that he allowed the statute of limitations for filing the federal writ to expire, and that as a result of these failures, Tallmadge lost his opportunity to file any *habeas corpus* actions. Such lost opportunity prevented Tallmadge from being able to possibly prevail in a *habeas corpus* action, which could have resulted in a new trial.

¶ 17. Boyle, in response, submits a plethora of factual assertions and affidavits documenting exactly what he and his firm did during the time it represented Tallmadge and why no writs had been filed. Boyle asserts that he hired California local counsel, and that together with Tallmadge, the three men agreed as to the best strategy. The California criminal attorney, Kevin McDermott, believed that Tallmadge would never succeed in securing a new trial by writ if the writ merely rehashed issues which were already denied on appeal. The materials also assert that Tallmadge did not want to file any writ until they were sure that all investigative leads had been exhausted. Boyle also asserts that they did not file a federal writ because it was decided that such would not be the most successful route at securing a new trial. The record also contains a detailed description and accounting of all work performed by the Boyle law firm and all costs associated with the work performed. Attorney McDermott's affidavit states that: "We discussed various options with Tallmadge, and he agreed that the best approach was to pursue the state court habeas corpus petition premised on newly discovered evidence," which they were working on finding. McDermott also avers that Tallmadge understood that there was no benefit to filing a federal *habeas* action because there was no chance of prevailing.

¶ 18. All of these disputes of fact, however, are not *material* because this case is controlled by *Hicks*, which held that liability in a legal malpractice action when the plaintiff is a criminal defendant cannot be imposed unless the plaintiff "can establish [that he was innocent] of the charges of which he was convicted." *Id.*, 253 Wis. 2d 721, ¶ 34. The trial court in the instant case concluded that Tallmadge failed to present sufficient evidence to create a dispute of fact as to causation. We agree with the trial court. There is no evidence to demonstrate that Tallmadge had any possibility of securing a new trial on all fifteen convictions. The federal *habeas* action filed by Sutton addressed only two of the fifteen convictions, and thus, even if it had succeeded, it would not have secured Tallmadge's freedom. The remaining issues in Sutton's petition related to issues which had already been ruled non-meritorious during the direct appeal. The bottom line is that neither Boyle, Tallmadge, or Sutton were able to develop any meritorious claims in this case. Any conclusory assertions that, but for Boyle's actions, Tallmadge would be a free man are purely speculative.

¶ 19. There is nothing in this record to demonstrate that Tallmadge could prove that any action or inaction by Boyle caused him any recoverable injury. In a situation where a criminally convicted defendant files a legal malpractice lawsuit, the injury is different than in non-criminal settings. In order to prove causation, the convicted criminal must show that, but for his former attorney's conduct, he would have been successful in the criminal lawsuit. Success in this context is not merely to have a court grant a motion or even order a new trial. Success in this context is a get out of jail free

card. Thus, success here means proving to a jury that the convicted criminal is innocent of all fifteen counts for which he was convicted. *Hicks* clearly declares this to be the law in Wisconsin.

¶ 20. Tallmadge, nonetheless, argues that the *Hicks* rule should not apply in this case because he is not suing his former criminal *trial* lawyer, and thus, he should not be bound by the *Hicks* "actual innocence" requirement. We reject his argument.

■

¶ 21. There is nothing in the *Hicks* case which limits the public policy application of the "actual innocence" requirement to only those criminal defendants who are suing their former *trial* attorneys for legal malpractice. Rather, the language is quite clearly more general and dependent on public policy factors which apply equally to cases involving criminal defense attorneys hired to represented criminal defendants after conviction.

■

¶ 22. These public policy considerations include the following:

> (1) Permitting a convicted criminal to recover in a legal malpractice action against former defense counsel would result in the criminal being indirectly rewarded for his crimes. *Id.*, 253 Wis. 2d 721, ¶ 38;

> (2) "Permitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would . . . shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *Id.*, ¶ 40 (omission in original; citation omitted);

> (3) Allowing guilty plaintiffs to recover in a civil suit against their former criminal defense attorneys

shifts the responsibility for the criminal act away from the convict, who would not be in jail had he not broken the law. *Id.*, ¶ 41;

(4) A guilty criminal does not have a right to liberty, and thus should not benefit from tort law. *Id.*, ¶ 42;

(5) The constitutional safeguards of the criminal justice system provide proper relief and should not give rise to civil liability. *Id.*, ¶ 43; and

(6) Wrongfully convicted defendants have other remedies to redress any wrongs. *Id.*, ¶ 44.

The bottom line is that public policy in this state bars convicted criminals who file a legal malpractice claim, from recovering money from their former defense counsel, unless they can prove that "but for" that defense counsel's actions, the convicted criminal would be free. Tallmadge fails to provide us with any persuasive reason for making a distinction between legal malpractice actions against trial counsel versus appellate counsel. The public policy in this state does not support Tallmadge's attempted distinction. Thus, because there is nothing in the record to suggest that but for Boyle's actions or inactions Tallmadge would be out of prison, summary judgment was proper, and public policy considerations preclude the continuation of this legal malpractice action.

## B. *Attorney's Fees.*

¶ 23. Tallmadge's second issue relates to the attorney's fees paid to Boyle by the Albright Trust. Tallmadge requested that Boyle be ordered to return the $185,000 paid to him by the trust. The trial court dismissed the request, ruling that Tallmadge did not

have standing to make such a request because he was the beneficiary of the trust rather than the trustee.

¶ 24. The parties do not disagree that the law in this state requires that when a third party damages trust property, it is the trustee and not the beneficiary of the trust who is the proper party to maintain an action for the damages. *See United States ex rel. Mosay v. Buffalo Bros. Mgmt., Inc.,* 20 F.3d 739, 742 (7th Cir. 1994). Tallmadge concedes that point, but argues that the trial court erred in ruling that: (1) the two recognized exceptions do not apply to this case; and (2) an additional exception to the general rule for the circumstances presented herein should be recognized.[3]

¶ 25. The trial court found that the two recognized exceptions to the general rule that the trustee is the proper party to maintain an action do not apply. The two exceptions state that a beneficiary may bring an action if: (1) there is a conflict of interest with the trustee; or (2) if the trustee fails to bring a meritorious claim against a third party for failing to provide contracted services. *See Schaefer v. Schaefer,* 91 Wis. 2d 360, 368, 283 N.W.2d 410 (Ct. App. 1979). Tallmadge claims that he demonstrated that a conflict existed between the trustee and himself and that the exception

---

[3] Tallmadge also claims the trial court erred in allowing Boyle to assert the standing defense because it was not pled in his answer as an affirmative defense. We reject this contention. The record reflects that Tallmadge never made the request for the return of fees until the original summary judgment hearing date. Immediately thereafter, Boyle asserted the standing defense. Accordingly, the trial court did not err in considering and applying the defense. There would be no reason for Boyle to raise the standing defense until Tallmadge provided notice that he was requesting a return of the monies paid.

527

in will cases should be extended to apply here. As a result, he asserts that he should be allowed to pursue a claim for the return of the $185,000.

¶ 26. The trial court found that neither recognized exception applied here. First, the trial court held that Tallmadge failed to establish any conflict of interest. Although Tallmadge alleged that inferences existed to suggest that the trustee and Boyle were friends, that the trustee did not want to sue Boyle and the two collaborated to remove Tallmadge as co-trustee, Tallmadge failed to produce any actual evidence to support his allegations. The trustee hired and paid Boyle to work on Tallmadge's behalf, but there was no other evidence to suggest any improper relationship. Boyle submitted a detailed accounting of time spent and expenses and all payments were approved by the circuit court before the trust issued payment. We have not been presented with any evidence to render the trial court's finding in this regard erroneous.

¶ 27. Second, the trial court found there was no basis to apply the second exception—that is, the trustee failed to bring a meritorious claim against Boyle. The trial court found, and Tallmadge does not dispute, that there is no evidence demonstrating that Tallmadge even asked the trustee to bring suit against Boyle. Because no such evidence exists, this exception cannot apply.

¶ 28. Tallmadge focuses his argument primarily on seeking to extend the limited "will" exception to the circumstances herein. Tallmadge cites several cases wherein the court held that beneficiaries of wills could maintain an action against the attorney who negligently drafted or supervised the execution of a will despite the lack of privity. *See, e.g., Auric v. Continental*

*Cas. Co.*, 111 Wis. 2d 507, 509, 331 N.W.2d 325 (1983). Tallmadge argues that allowing him to sue Boyle directly for the return of the $185,000 paid satisfies the "accountability" public policy factor set forth in *Auric*.

¶ 29. We decline to extend the narrow "will" exception to cases involving trusts. The beneficiary in the will cases are allowed to make a claim for damages because they actually sustained the damages. Such is not the case here. Tallmadge did not sustain "damages" in this case; rather, the "damages" (the $185,000 paid) were sustained by the trust itself. Thus, the trustee of the trust is the proper party to hold Boyle accountable for the monies paid out on the contract for legal services.

¶ 30. Based on the foregoing, we affirm the order of the trial court granting summary judgment.

*By the Court.*—Order affirmed.

¶ 31. FINE, J. (*concurring*). I concur in the Majority opinion, and briefly explain my reasons.

¶ 32. First, I agree with the Majority that quite properly a convicted defendant cannot recover against his or her lawyer for legal malpractice that allegedly caused the defendant's conviction unless the defendant can show by the civil burden of proof that he or she was actually innocent of the crime and, also, that the lawyer's malpractice was a cause of the conviction. *Hicks v. Nunnery*, 2002 WI App 87, ¶¶ 34–50, 253 Wis. 2d 721, 747–756, 643 N.W.2d 809, 820–824. I see no neutral-principled reason why the same rule does not apply in the postconviction setting. Constitutional principles and technical rules of trial that may permit guilty defendants to avoid conviction are, as *Hicks* recognized, " 'not intended to confer any direct benefit outside the

context of the criminal justice system. Thus, defense counsel's negligent failure to utilize them to secure an acquittal or dismissal for a guilty defendant does not give rise to civil liability.' " *Id.*, 2002 WI App 87, ¶ 43, 253 Wis. 2d at 751, 643 N.W.2d at 822 (quoted source omitted). Accordingly, as I see it, a convicted defendant who claims that a lawyer's postconviction malpractice deprived that defendant of a postconviction remedy must establish three things by the normal civil burden of proof, that: (1) but for the postconviction lawyer's negligence the defendant would have gotten a new trial; and, if so (2) the defendant would have been acquitted on the retrial; and, also (3) the defendant is actually innocent of the crime. *See id.*, 2002 WI App 87, ¶ 50, 253 Wis. 2d at 755, 643 N.W.2d at 824 ("We emphasize that the question of a plaintiff's innocence is in addition to, not a substitute for, a jury question regarding whether the plaintiff would have been found not guilty absent the defendant's negligence."). I agree with the Majority that Walter David Tallmadge has not made the requisite summary-judgment showing here. *See Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993) (party resisting summary judgment has burden to set forth specific facts to establish elements on which they have burden of proof at trial).

¶ 33. Second, I agree with the Majority that a beneficiary of a trust does not have standing to seek disgorgement of trust funds the beneficiary claims were improperly paid to, or improperly retained by, a third person *unless* the beneficiary shows either that: (1) the trustee or trustees had an interest in connection with the matter that was adverse to the beneficiary, or (2) the trustee or trustees had failed to seek the disgorgement even though asked to do so. *Schaefer v.*

*Schaefer*, 91 Wis. 2d 360, 368, 283 N.W.2d 410, 415 (Ct. App. 1979). I agree with the Majority that Tallmadge has not passed summary-judgment muster in connection with either alternative. *See Transportation Ins. Co.*, 179 Wis. 2d at 290, 507 N.W.2d at 139 (party resisting summary judgment has burden to set forth specific facts to establish elements on which they have burden of proof at trial).

¶ 34. I write separately to also point out that the two issues presented by this appeal (lawyer malpractice and disgorgement of money paid to that lawyer) are separate inquiries; that is, recovery seeking disgorgement of funds paid to a lawyer that he or she did not *earn* does not depend, as would a malpractice action, on the defendant's proof of actual innocence.

¶ 35. Based on the foregoing, I concur in the Majority opinion.